**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JIM ROSE and ANITA GIAN<br>　　　　　Plaintiff,<br>v.<br><br>MERCEDES-BENZ USA, LLC; MERCEDES-BENZ GROUP AG F/K/A DAIMLER AG; and DOES 1 through 100, inclusive,<br>Defendants. | Case No.:  1:22-cv-6099<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

**TABLE OF CONTENTS**

*Page*

I     INTRODUCTION ................................................................................ 1

II    PARTIES ............................................................................................ 4

    A.    Plaintiffs ................................................................................. 4

        1.    Illinois – Plaintiff Jim Rose ......................................... 4

        2.    New York – Plaintiff Anita Gian ................................. 5

    B.    Defendants ............................................................................. 5

        1.    Defendant Mercedes-Benz USA, LLC ........................ 5

        2.    Defendant Mercedes-Benz Group AG f/k/a Daimler AG.......................... 7

        3.    Defendants Does 1 through 100.................................... 8

III    JURISDICTION ................................................................................ 8

    A.    Subject-Matter Jurisdiction.................................................... 8

    B.    Personal Jurisdiction ............................................................. 8

IV    VENUE .............................................................................................. 9

V    FACTUAL ALLEGATIONS ............................................................ 9

    A.    Telematics and their Role in the Auto Market....................... 9

    B.    Mercedes Historically has Failed to Plan for Obvious and Imminent Changes in Technology ................................................................ 10

    C.    The MBRACE Telematics System ...................................... 11

    D.    Mercedes Knew for Years that 3G Networks would be Decommissioned, Rendering the MBRACE System Obsolete ........................ 14

    E.    Mercedes' Belated Disclosure to Customers ....................... 16

    F.    Despite Express Warranties, Mercedes Refused to Replace the MBRACE System ................................................................ 17

**TABLE OF CONTENTS (cont.)**

*Page*

VI    CLASS ACTION ALLEGATIONS ................................................................. 18

     A.    Numerosity................................................................................................ 19

     B.    Typicality ................................................................................................. 19

     C.    Adequacy ................................................................................................. 20

     D.    Superiority................................................................................................ 20

     E.    Predominance of Common Issues ........................................................... 21

VII    TOLLING AND STATUTES OF lIMITATIONS ......................................... 22

     A.    Discovery Rule......................................................................................... 22

     B.    Fraudulent Concealment ......................................................................... 23

     C.    Estoppel................................................................................................... 23

VIII    CAUSES OF ACTION ................................................................................. 24

     A.    Claims Brought on Behalf of the Nationwide Class ............................... 24

         COUNT I: Violation of Magnusson-Moss Warranty Act...................... 24

     B.    Claims Brought on Behalf of the Illinois Class ...................................... 26

         COUNT II: Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act........................................................................ 26

         COUNT III: Violation of the Illinois Uniform Deceptive Trade Practices Act ... 28

         COUNT IV: Breach of Express Warranty ............................................. 30

         COUNT V: Breach of Contract/Common Law Warranty ..................... 32

         COUNT VI: Fraud By Concealment ..................................................... 33

         COUNT VII: Unjust Enrichment .......................................................... 34

     C.    Claims Brought on Behalf of the New York Class................................. 35

**TABLE OF CONTENTS (cont.)**

*Page*

COUNT VIII: Violation of New York General Business Law,

N.Y. Gen. Bus. Law § 349 ............................................................ 35

COUNT IX: False Advertising .............................................................. 37

COUNT X: Breach of Express Warranty .............................................. 40

COUNT XI: Breach of Contract/Common Law Warranty .................... 41

COUNT XII: Fraud By Concealment .................................................... 42

COUNT XIII: Unjust Enrichment ........................................................ 44

IX       PRAYER FOR RELIEF ................................................................. 44

Plaintiffs Jim Rose and Anita Gian, on behalf of themselves and all others similarly situated, with knowledge as to her own actions and events, and upon information and belief as to other matters, complain and allege as follows:

## I      INTRODUCTION

1.      Plaintiffs Jim Rose and Anita Gian bring this action individually for themselves and on behalf of all persons who purchased or leased certain vehicles equipped with defective mbrace telematics systems ("MBRACE") designed, manufactured, advertised, distributed, warranted, and sold or leased by Mercedes-Benz USA, LLC ("MBUSA") and Mercedes-Benz Group AG f/k/a Daimler ("MB Group") (collectively "Mercedes").

2.      This complaint concerns all Mercedes vehicles equipped with the MBRACE system rendered obsolete upon the 3G system sunset in 2022. Upon information and belief, these vehicles include:

a) 2000 – 2012 All Models

b) 2013 S-Class, CL-Class

c) 2014 AMG SLS, CL-Class

d) 2013 – 2016 C-Class, E-Class, CLS, CLS, M-Class, GL, AMG SL, SLK/SLC, G-Class

e) 2013 – 2015 GLK

f) 2014 – 2016 B-Class, CLA, S-Class

g) 2015 – 2016 AMG GT

h) 2016 – GLC, GLE Coupe

i) Select 2017 G-Class Coupe, GLS, AMG GT, S-Class cabriolet, S65 AMG Sedan

3.      Together, the above-mentioned vehicles shall collectively be referred to herein as "Class Vehicles."

4.      In 2009, Mercedes introduced the MBRACE system as its signature telematics system—providing cutting-edge wireless connectivity with safety features like emergency crash reporting and roadside assistance. Originally, the MBRACE system was equipped in certain higher-end Mercedes vehicles with trial subscriptions of six months to entice owners into long-term paid subscriptions.

5.      By 2016, Mercedes had included the MBRACE system as standard in all Mercedes vehicles, highlighting the cutting-edge nature of the system and its advanced role in car connectivity. New features included Remote Vehicle Diagnostics, which allowed Mercedes dealerships to monitor the vehicles remotely. All Mercedes vehicles model years 2016 or later included five years of the MBRACE service, free of charge.

6.      Despite Mercedes' representations concerning the technological sophistication and longevity of the MBRACE system, the system was inherently defective. Both the original and updated versions of MBRACE were compatible only with 3G wireless—meaning that the MBRACE system would be obsolete once 3G networks were shut down.

7.      3G networks across the broadcast spectrum are allocated by the government and owned and managed by wireless companies like Verizon and AT&T. Introduced in the mid-2000s, 3G networks provided an upgrade over analog and 2G networks. 3G was then superseded by later generations of mobile telecommunications networks such as 4G and 5G.

8.      Mercedes knew this but failed to adapt MBRACE for the coming obsolescence of 3G technology. No later than 2012, Mercedes knew or should have known that MBRACE would become obsolete when 3G networks were decommissioned.

9.     Despite this knowledge, Mercedes fraudulently concealed, failed to disclose, and/or misrepresented numerous material facts concerning the safety benefits, functionality, and longevity of the MBRACE system. For example, Mercedes failed to disclose that the MBRACE system only operated with 3G networks and would be rendered obsolete when those networks were decommissioned.

10.     In 2021, Mercedes finally acknowledged that the MBRACE system would become obsolete in 2022 because of the 3G sunset. However, Mercedes failed to adhere to its obligations under its warranties with Plaintiffs and Class Members by refusing to repair or replace the MBRACE system at no cost.

11.     Instead, Mercedes informed Plaintiffs and Class Members that they needed to purchase at their own expense an aftermarket telematics system, the Verizon Hum, to be able to continue using the MBRACE service. The Verizon Hum was designed by Mercedes' exclusive telematics partner, Verizon Communication ("Verizon"), in 2015, yet was designed to be 4G-compatible. To purchase this replacement system, Plaintiffs and Class Members would be required to pay for hardware, data plans and the subscription fees.

12.     As a result, Plaintiffs and the Class are left with obsolete technology Mercedes marketed and promoted as key components of its vehicles. Plaintiffs and Class Members must now choose whether to forego the MBRACE system or pay out-of-pocket for an alternative. Either way, Mercedes' fraudulent and deceptive practices have deprived Plaintiffs and Class Members of the benefit of their bargain, diminished the value of the Class Vehicles, and caused Plaintiffs and Class Members to incur costs resulting from Mercedes' wrongful conduct.

13.     Plaintiffs, for themselves and all others similarly situated, bring this action for contractual enforcement and damages, as well as restitution and injunctive relief requiring

3

Mercedes to: 1) provide the funds required to purchase the hardware, data plans, and subscription fees for the alternative service; 2) reimburse customers for costs and fees paid to replace the MBRACE system with an aftermarket system; 3) reimburse customers whose vehicles have been devalued by the permanent obsolescence of the MBRACE system and the replacement of the MBRACE system with an aftermarket alternative; 4) provide notice to customers of this change in practice; and 5) refrain from engaging in this conduct in the future.

## II    PARTIES

### A.    Plaintiffs

#### 1.    Illinois – Plaintiff Jim Rose

14.    Plaintiff Jim Rose is a resident of Schaumburg, Illinois. Plaintiff Rose owns a 2017 Mercedes GLE 43 AMG, which he purchased new from Mercedes-Benz of Hoffman Estates, an authorized Mercedes dealer located in Hoffman Estates, Illinois

15.    Upon purchase, Plaintiff Rose knew from his research that the vehicle model he was purchasing came with the MBRACE system. The MBRACE system was an important feature to Plaintiff Rose who wanted the safety and security features it provided for safety concerns and peace of mind. Plaintiff Rose subscribed to MBRACE for the duration of the vehicle's capability.

16.    Plaintiff Rose has used the MBRACE safety features often throughout the life of the vehicle.

17.    Neither Mercedes Benz, nor any of its agents, dealers, or other representatives informed Plaintiff Rose at the time of purchase that the MBRACE system, which relied on 3G networks, would be phased out, or otherwise incompatible with the vehicle at a later date.

4

18.     To date, Plaintiff Rose is unaware of having received notice that his MBRACE system is inoperative or no longer compatible with his vehicle.

### 2.     New York – Plaintiff Anita Gian

19.     Plaintiff Anita Gian is a resident of Cassadaga, New York. Plaintiff owns a 2015 Mercedes C400, which she purchased new from Mercedes-Benz of Rochester, New York, an authorized Mercedes dealer, in or around January 2015.

20.     Upon purchase, Plaintiff Gian knew from her research that the vehicle model she was purchasing came with the MBRACE system. This was important to her that she had this system for safety concerns and peace of mind. Plaintiff Gian subscribed to MBRACE for the duration of the vehicle's capability.

21.     Plaintiff Gian used the MBRACE system multiple times to contact Mercedes, including one time when she was traveling cross-country and needed assistance with a flat tire.

22.     Neither Mercedes Benz, nor any of its agents, dealers, or other representatives informed Plaintiff Gian at the time of purchase that the MBRACE system, which relied on 3G networks, would be phased out, or otherwise incompatible with the vehicle at a later date.

23.     In approximately July 2022, Plaintiff Gian received notice from Mercedes that the MBRACE system would no longer be compatible with her vehicle. She received approximately a one-month refund for the subscription upon her request.

### B.     Defendants

### 1.     Defendant Mercedes-Benz USA, LLC

24.     Defendant MBUSA is a Delaware limited liability company with its principal place of business in Atlanta, Georgia.

5

25.    Until approximately July 2015, MBUSA was headquartered and had its principal place of business in Montvale, New Jersey, where it directed and engaged in the design, manufacturing, marketing, warranting, distributing, selling, leasing, and servicing of Class Vehicles from its headquarters in Montvale, New Jersey.

26.    MBUSA's Central Region Office and Chicago Parts Distribution Center are located in Carol Streams, Illinois where MBUSA directs the marketing distribution, selling, leasing, and servicing of Class Vehicles in the region.

27.    The MBRACE system, including the most recent version, MBRACE Connect, was planned, designed, developed, and manufactured while MBUSA had its headquarters and principal place of business in New Jersey.

28.    Mercedes made the decision to include, market, and advertise the defective MBRACE system as standard in Mercedes vehicles while headquartered in Montvale, New Jersey.

29.    MBUSA directs and manages advertising, sales, and marketing for dealers in the Central Region, including the advertising, sale, marketing, and lease of Class Vehicles equipped with the MBRACE system from its Central Region Office located in Carol Streams, Illinois.

30.    MBUSA trains Mercedes and dealership personnel concerning the marketing, warranting, sale, and lease of Class Vehicles equipped with the MBRACE system from its Learning and Performance Center in Robbinsville, New Jersey.

31.    MBUSA distributes Mercedes' parts and houses parts inventory for the Central Region and, at all relevant times, MBUSA distributed Class Vehicles equipped with the MBRACE system from its Regional Parts Distribution Center in Carol Streams, Illinois.

32.     MBUSA is a wholly owned subsidiary of Mercedes-Benz Group AG f/k/a Daimler AG.

33.     At all relevant times, MBUSA has been an agent of Mercedes-Benz Group AG f/k/a Daimler AG and acted subject to its control.

**2.      Defendant Mercedes-Benz Group AG f/k/a Daimler AG**

34.     Defendant MB Group is a German corporation with its principal place of business in Stuttgart, Germany.

35.     At all relevant times, MB Group directed the designing, engineering, manufacturing, testing, marketing, supplying, selling, and distributing vehicles, including Class Vehicles, in the United States.

36.     Upon information and belief, MB Group has, and at all relevant times had, the contractual right to exercise control over the design of Class Vehicles, the marketing of Class Vehicles, the warranties concerning Class Vehicles, and the representations made, and facts concealed from consumers and the public concerning the MBRACE system.

37.     At all relevant times, MB Group held MBUSA out as its agent in the United States for, among other things, the marketing, sale, and lease of Class Vehicles and managing and structuring Mercedes' rights and obligations concerning buyers and lessees of Mercedes vehicles.

38.     MB Group conducted, and continues to conduct, continuous business in the United States by, among other things, directed, managing, and overseeing the marketing, distribution, sale, and lease of Mercedes' vehicles by MBUSA.

39.     MBUSA is the sole distributor of Mercedes vehicles in the United States through its contractual relationship with MB Group.

40.     MB Group is the parent of, and controls and manages, MBUSA in, among other things, the marketing, advertising, warranting, sale, and lease of Class Vehicles throughout the United States.

### 3.     Defendants Does 1 Through 100

41.     The true names and capacities of Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by such fictitious names. Each of the Defendants designated herein as a DOE is legally responsible in some manner for the unlawful acts referred to herein. Plaintiffs will seek leave of Court to amend this Complaint to reflect the true names and capacities of the Defendants designated herein as DOES when such identities become known.

### III     JURISDICTION

### A.     Subject-Matter Jurisdiction

42.     This court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the class exceeds 100 members, the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs, and at least one Class Member is a citizen of a state different from Mercedes.

43.     Additionally, this Court has federal question jurisdiction over this action under 28 U.S.C. § 1331 because this action includes claims arising under federal law.

44.     This Court also has supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367(a).

### B.     Personal Jurisdiction

45.     This Court has personal jurisdiction over MBUSA because a substantial part of the conduct giving rise to this complaint occurred in Illinois. MBUSA directed the marketing,

promotion, sale, and lease of MBUSA vehicles in Illinois from their Central Region Office in Illinois. To this day, MBUSA maintains substantial and continuous connections to the District through its maintenance of training and distribution facilities, as well as its Central Region Office, in Illinois.

46.     This Court has personal jurisdiction over MB Group because, for the majority of the relevant time period, MB Group directed and conducted their business in Illinois through their Central Region Office in Illinois and a substantial amount of the acts and/or omissions giving rise to this complaint took place in the District.

### IV     VENUE

47.     Venue is proper in the United States District Court for the Northern District of Illinois under 28 U.S.C. § 1391 because a substantial part of the conduct giving rise to these claims occurred in the District. Mercedes also conducted and continues to conduct substantial business in the District, has many dealerships in the District, trains dealership and Mercedes personnel in the District, and profits from its activities in the District.

### V     FACTUAL ALLEGATIONS

#### A.     Telematics and Their Role in the Auto Market

48.     Mercedes-Benz has long been one of the world's most respected automobile manufacturers, known for luxury models sold at high prices. To stay relevant in the information age, where smartphone integration and roadside assistance-capability factor into a car purchase as much as horsepower, Mercedes sought to profit from the lucrative potential of vehicle telematics by launching its own telematics component, MBRACE.

49.     Since the late 1990's, vehicle telematics had developed from a novelty to a necessary component. GM first cornered the market with its OnStar telematics unit. Over time,

what had once been a novelty had "quietly become a profit margin superstar" for GM, with revenues estimated at approximately $1.5 billion annually and a profit margin of 30-35 percent—five times the profit margin GM realized on its cars. The auto industry took notice.

50. Competitors began challenging GM's telematics leadership, pouring billions of dollars into telematics systems and wireless connectivity. Telematics systems became critical components for manufacturers attempting to distinguish their products from competitors. One 2013 study by the consulting firm Accenture found that in-vehicle technology had become the top selling point for 39 percent of car buyers—dwarfing the 14 percent of buyers prioritizing traditional considerations such as power and speed.

**B. Mercedes Historically Has Failed to Plan for Obvious and Imminent Changes in Technology**

51. The history of connected car telematics traces the data revolution. Beginning with OnStar in 1996, telematics systems have required access to networks broadcasting analog or digital signals. Early telematics systems, like OnStar or Mercedes' previous telematics system, Tele Aid, utilized analog signals, which supported voice calls only.

52. Following the phase-out of analog networks, companies like Mercedes confronted the same issue—whether to plan for newer technologies from the jump or create an analog-only telematics system destined to become obsolete. Mercedes chose the latter.

53. The Tele Aid system relied on analog signals and was not compatible with newer generation technologies, like 3G. Mercedes began marketing the Tele Aid system in 1999 as an analog-only telematics system. By 2001, however, announcements and actions taken by the Federal Communications Commission ("FCC") and telecommunications companies put Mercedes on notice that analog networks would soon be decommissioned.

10

54.     Despite this, Mercedes continued to equip its vehicles with the analog-only Tele Aid system until as late as 2006. This decision proved to be short-sighted, as analog networks were decommissioned in 2008, leaving a generation of Mercedes vehicles with obsolete systems.

55.     The Tele Aid episode offered useful lessons to Mercedes regarding the counterintuitive benefits of offering telematics in the face of technological obsolescence. Mercedes continued to equip its vehicles with analog-only technology despite knowing that developing technology would soon render the system non-functional. Mercedes failed to disclose this to purchasers and lessees, meaning that it could obtain the benefit of increasing sales by advertising a service to that it would only need to maintain while the service remained operational. Once analog networks were decommissioned in 2008, the analog-only Tele Aid systems became obsolete and non-functional—leading to litigation and an eventual class settlement in *In re: Mercedes-Benz Tele Aid Contract Litigation*.[1]

## C.     The MBRACE Telematics System

56.     Of course, Mercedes continued to embrace telematics and sought to profit from newer generation vehicle telematics relying on newer generation wireless networks. But it took the same route as it did before—when the technology became outdated, Mercedes could just move on and leave buyers without the system they had paid for.

57.     In 2007, Mercedes entered a contract with Hughes Telematics, Inc. ("HTI"), to become the exclusive telematics service provider for all new vehicles Mercedes manufactured

---

[1] *In Re Mercedes-Benz Tele Aid Contract Litig.*, Civ. No. 07-2720 (DRD), MDL No. 1914 (D.N.J. Sep. 9, 2011).

and sold through 2016. Under the agreement, Mercedes had the right to approve each generation of hardware design and propose changes.[2]

58.     Through this partnership, Mercedes developed and launched MBRACE. Announcing the launch, Mercedes claimed to have learned its lessons from the Tele Aid episode. Sascha Simon, then Mercedes' director of advanced product planning, explained:

> The problem that has beleaguered this technology in the past is the life cycle of the car far outlives the life cycle of consumer electronics. To overcome that, we realized we needed to change the paradigm. We want to put technology in our cars that can be updated all the time. It allows us to add new applications, new uses, and new value to our customers' cars on a regular basis.[3]

59.     The MBRACE system operated using 3G networks—increasing the amounts and types of data possible to transmit and receive. Upon its launch, MBRACE offered a variety of cutting-edge services including automatic collision notification and comprehensive navigation assistance. Perhaps more notable was MBRACE's capability to add services and software updates through an "app store."

60.     Beginning in 2009, MBRACE was offered as standard equipment in all Mercedes models except the GLK, E-Coupe, SLK, and C-Class models. Purchasers and lessees of vehicles lacking the MBACE system could upgrade their automobiles to include it.

61.     MBRACE services operated on a subscription model that utilized free trial periods to entice long-term subscribers. New vehicles equipped with MBRACE received the first

---

[2] Telematics Service Agreement between Hughes Telematics, Inc. and Mercedes-Benz USA, LLC, SEC (Oct. 31, 2007), https://www.sec.gov/Archives/edgar/data/1410240/000119312509123385/dex1018.htm [last visited Oct. 9, 2022].
[3] Chuck Squatriglia, WIRED, *Mercedes 'mbraces' Telematics* (Nov. 13, 2009), https://www.wired.com/2009/11/mercedes-mbrace-telematics/ [last visited Oct. 11, 2022].

six months of the service free, while purchasers or lessees of pre-owned vehicles got the first three months free. After the trial period expired, the service cost $280 a month.

62.     In 2012, Mercedes announced the launch of the MBRACE2 telematics system.[4] MBRACE2 still relied on 3G networks but promoted additional technological upgrades including the ability to install upgrades from the cloud.

63.     In July 2012, HTI was acquired by Verizon Communications, Inc. ("Verizon") to "expand Verizon's capabilities in the automotive [] telematics marketplace. . . ."[5] As a result, Verizon succeeded HTI as the exclusive telematics service provider for Mercedes.

64.     In 2015, Mercedes and Verizon announced that Verizon would remain Mercedes' exclusive telematics partner.[6] At the same time, the parties announced that the MBRACE Connect platform would be complementary for five years in all Mercedes vehicles model years 2016 or later.

65.     The MBRACE Connect system debuted features such as Remote Start and Remote Diagnostic Test. In addition to the upgraded features, Mercedes marketed and promoted MBRACE Connect as "a collection of services that will remain active with the vehicle beyond the new vehicle limited warranty, and in many cases, the original owner."[7]

---

[4] JUST AUTO, *US: Mercedes Announces 'mbrace 2' at CES* (Jan. 12, 2012), https://www.just-auto.com/news/us-mercedes-announces-mbrace2-at-ces/ [last visited Oct. 10, 2022].
[5] VERIZON, *Verizon to Acquire Hughes Telematics, Inc.*, (June 1, 2012) https://www.verizon.com/about/news/press-releases/verizon-acquire-hughes-telematics-inc [last visited Oct. 7, 2022].
[6] Monica Alleven, FIERCE WIRELESS, *Verizon Telematics Extends Relationship with Mercedes-Benz*, (Aug. 12, 2015) https://www.fiercewireless.com/tech/verizon-telematics-extends-relationship-mercedes-benz#:~:text=Verizon%20Telematics%20(NYSE%3A%20VZ),and%20newer%20Mercedes%2DBenz%20vehicles [last visited Oct. 10, 2022].
[7] MERCEDES BENZ, *RE: 'mbrace Connect' launches August 3 :: Important Information to Know*, July 25, 2015, https://di-uploads-pod7.s3.amazonaws.com/mercedesbenzofathens/uploads/2016/09/mbrace-Connect.pdf [last visited Oct. 10, 2022].

66.     Despite Mercedes' representations concerning the cutting-edge features and longevity of MBRACE Connect, the system was fatally flawed because it was equipped with technology only compatible with 3G networks. The system could not be upgraded or adapted to function with later generation networks. As a result, Mercedes repeated its Tele Aid system gambit.

67.     In or about 2021, Mercedes publicly acknowledged that the MBRACE system would be obsolete once 3G networks were decommissioned. And when Verizon decommissioned its 3G network, the MBRACE system did become obsolete.

**D.      Mercedes Knew For Years that 3G Networks Would Be Decommissioned, Rendering the MBRACE System Obsolete**

68.     Mercedes has long known that 3G would be replaced by later generation 4G and 5G networks. Mercedes was aware of 3G's imminent obsolescence through, among other things: (1) publicly available notices and announcements by the Federal Communications Commission which regulates nationwide broadband spectrums; (2) public announcements by telecommunications companies transitioning to 4G and later generation broadband, including Mercedes' exclusive telematics provider Verizon; and (3) communications between Mercedes and Verizon during the design and development of the MBRACE system.

69.     As early as 2008, the imminent 3G decommission was apparent when the FCC auctioned the 700 MHZ spectrum to buyers intending to transition to 4G LTE. By 2009, the transition to 4G networks was already beginning in earnest.

14

70. Verizon continuously communicated its intent to decommission their 3G networks. As early as 2010, Verizon announced that it would transition its entire 3G network to 4G LTE.[8]

71. Verizon also engaged in telematics projects signaling the necessity of 4G-compatible telematics. In 2012, at the same time Verizon purchased HTI and became Mercedes' partner, Verizon formed the "4G Venture Forum for Connected Cars" to "accelerate development of the 4G LTE ecosystem across automotive OEMs, suppliers, device manufacturers, application developers and content publishers."[9]

72. Similarly, in 2015 Verizon launched the Verizon Hum, an aftermarket telematics system compatible with 4G networks. In fact, Mercedes would later offer the Verizon Hum as alternative for Mercedes owners stuck with obsolete MBRACE systems.

73. Finally, Verizon had been publicly announcing its plans since 2016 to decommission its 3G CDMA network.[10] Verizon had been intimately involved in the nationwide decommissioning of 3G networks and, and their exclusive telematics provider, Mercedes was aware that MBRACE would fail without updated technology.

74. Despite knowing about 3G's imminent obsolescence, Mercedes equipped the Class Vehicles with the 3G-only MBRACE telematics system and did not design MBRACE to be adapted to use 4G or later networks.

---

[8] CONNECTING AM.: THE NAT'L BROADBAND PLAN, 2010 WL 972375 at 77 (F.C.C. Mar. 16, 2010) *available at* https://transition.fcc.gov/national-broadband-plan/national-broadband-plan.pdf [last visited Oct. 11, 2022].

[9] TELECOMLEAD, *Verizon Join Hands with BMW, Honda, Hyundai, Toyota for 4G Connected Cars Forum* (Aug. 5, 2012) https://www.telecomlead.com/4g-lte/verizon-join-hands-with-bmw-honda-hyundai-and-toyota-for-4g-connected-cars-forum-9709 [last visited Oct. 14, 2022].

[10] Mike Haberman, *3G CDMA Network Shut Off Date Set for December 21, 2022*, VERIZON NEWS CENTER (March 30, 2022), https://www.verizon.com/about/news/3g-cdma-network-shut-date-set-december-31-2022 [last visited Oct. 14, 2022].

**E.      Mercedes' Belated Disclosure to Customers**

75.      It was not until May 2021 that Mercedes informed automobile owners that "[a]fter the sundown of [the] 3G network, the telematics communication module in your vehicle will become obsolete."[11] On the same webpage, Mercedes suggested that Verizon's "decision to phase out 3G technology was the decision of the wireless carriers and beyond our control."[12]

76.      Mercedes did not offer to replace or repair the MBRACE system. Instead, it informed customers that it had "teamed with Verizon, our mbrace partner, to offer an OBD Dongle as an alternative solution." The Verizon product, called the "Hum," installs through a vehicle's OBD diagnostic port and, supposedly "offer[s] similar services to mbrace." Despite offering the Verizon Hum as an "alternative solution," Mercedes did not offer to pay for the Hum device or the Verizon data plans necessary to use the underlying service.

77.      Verizon launched "Hum" in 2015 and developed the product as an aftermarket, direct-to-consumers telematics system while Verizon was still contracted to be the exclusive telematics provider of Mercedes and the service provider of the MBRACE system. Though designed at the same time as the MBRACE system, the Verizon "Hum" does not suffer from MBRACE's defect and can utilize later generation networks.

78.      Mercedes deceived Plaintiffs and Class Members by marketing, promoting, selling and leasing vehicles equipped with the MBRACE system despite knowing that the product was going to become obsolete. Plaintiffs and Class Members must now purchase an aftermarket substitute (by Verizon, no less) that relies on technology that was available during the development of the MBRACE system.

---

[11] MERCEDES-BENZ, *Mercedes-Benz mbrace – 3G Network Sunset FAQ*, https://www.mbusa.com/en/owners/3g-network-sunset [last visited Oct. 14, 2022].
[12] *Id.*

**F.      Despite Express Warranties, Mercedes Refused to Replace the MBRACE System**

79.     MBUSA provides an express New Vehicle Limited Warranty ("Limited Warranty") on each vehicle. MBUSA provides the warranty in writing and regardless of the state in which the vehicle was purchased. MBUSA provides separate warranties for different model years, but they are substantially similar year to year.

80.     Plaintiffs and Class Members were provided with warranties and said warranties were the bases of their purchases of their vehicles.

81.     Mercedes' Limited Warranty, and its advertisements, brochures, and statements to the media, expressly warrant that Mercedes repair or replace defects in material or workmanship free of charge within the warranty period. The following language was included in Mercedes' Service and Warranty Information:

> New Vehicle Limited Warranty
>
> Items Which Are Covered:
>
> DEFECTS: Mercedes-Benz USA, LLC (MBUSA) warrants to the original and each subsequent owner of a new Mercedes-Benz vehicle that any authorized Mercedes-Benz Dealership will make any repairs or replacements necessary, to correct defects in material or workmanship, but not design, arising during the warranty period.
>
> . . .
>
> WARRANTY PERIOD: This warranty is for 48 months or 50,000 miles, whichever occurs first."
>
> . . .
>
> NO CHARGE: Warranty repairs will be made at no charge for parts and labor.[13]

---

[13] Service and Warranty Information 2017, MERCEDES-BENZ, https://loopmein.imgix.net/vehicle-documents/500f91b5-8e77-4b04-bed0-5cb5ec3396db.pdf [last visited Oct. 14, 2022].

82.     Plaintiffs and Class Members experienced defects within the warranty period. Despite the express warranties made to Plaintiffs and Class Members, MBUSA has failed to honor the terms of the the warranty to "make any repairs or replacements necessary to correct defects in material or workmanship . . . arising during the warranty period."[14]

83.     Mercedes has informed Plaintiffs and Class Members about the Verizon Hum, but has not offered to pay for the hardware, data plans, and subscription required to install or subscribe to the Verizon Hum service.

## VI     CLASS ACTION ALLEGATIONS

84.     Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), Plaintiffs bring this action on behalf of themselves and the following classes:

**Nationwide Class:**

All persons or entities in the United States who are current or former owners and/or lessees of a Class Vehicle.

85.     In the alternative to the Nationwide Class and pursuant to Federal Rule of Civil Procedure 23(c)(5), Plaintiffs seek to represent the following individual State Classes:

**Illinois Class**

All persons or entities in the State of Illinois who are current or former owners and/or lessees of a Class Vehicle and all persons or entities who purchased or leased a Class Vehicle in the State of Illinois.

**New York Class**

All persons or entities in the State of New York who are current or former owners and/or lessees of a Class Vehicle and all persons or entities who purchased or leased a Class Vehicle in the State of New York.

---

[14] Service and Warranty Information 2017, MERCEDES-BENZ, https://loopmein.imgix.net/vehicle-documents/500f91b5-8e77-4b04-bed0-5cb5ec3396db.pdf [last visited Oct. 14, 2022].

86. Together, the Nationwide Class and the State Classes shall be collectively referred to herein as the "Class."

87. Excluded from the proposed class are Defendant, its employees, co-conspirators, officers, directors, legal representatives, heirs, successors and wholly or partly own subsidiaries or affiliated companies; class counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case, as well as all persons within the third degree of relationship to any such person.

88. Plaintiffs contemplate the issuance of notice to proposed Class Members setting forth the subject and nature of the action. Upon information and belief, Defendant's own business records and electronic media can be utilized for the contemplated notices. Additional notices, if required, can be provided to Class Members by email, direct mail, public notice, or other means.

## A. Numerosity

89. Class Members are so numerous that their individual joinder is impractical. Plaintiffs are informed and believe there are hundreds of thousands of purchasers in the class. Insofar as class members may be identified through business records regularly maintained by Defendants and their employees and agents, through the media, or through other methods, the number and identities of class members can be ascertained. Members of the Class can be notified of the pending action by e-mail, mail, and supplemented by published notice, if necessary.

## B. Typicality

90. Plaintiffs' claims are typical of the Class Members' claims. Plaintiffs and Class Members purchased or leased Class Vehicles designed, manufactured, and distributed by Mercedes. Plaintiffs, like all Class Members, have been damaged by Mercedes' unlawful, unfair,

and deceptive practices in that they purchased a Class Vehicle they would not have purchased or would have paid less for had Mercedes not engaged in misconduct. Further, Plaintiffs, like Class Members, have incurred, or will incur, costs to replace the MBRACE system that they would not have incurred but for Mercedes' misconduct. Finally, the factual bases of Mercedes' misconduct are common to Plaintiffs and Class Members and represent a common practice of misconduct resulting in injury to Plaintiffs and Class Members.

## C.    Adequacy

91.    Plaintiffs adequately represents the Class because their interests do not conflict with the interests of the Class they seek to represent, they have retained counsel competent and highly experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.

## D.    Superiority

92.    A class action is superior to all other available means of fairly and efficiently adjudicating these claims. Each individual Class member suffered a relatively small injury compared to the burden and expense of individually prosecuting the complex and extensive litigation Mercedes' conduct necessitates. It would be virtually impossible for Class Members to effectively redress the wrongs done to them on an individual basis.

93.    Even if Class Members could afford such individual litigation, the courts cannot. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation also increases the delay and expense to all parties and to the court system, particularly where the subject matter of the case may be technically complex. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single

court. Upon information and belief, individual Class Members can be readily identified and notified based on, *inter alia*, Mercedes' vehicle identification numbers, warranty claims, registration records, and database of complaints.

94. Further, Mercedes has acted, and/or refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

**E.    Predominance of Common Issues**

95. Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual class members. The common legal and factual questions include, but are not limited to:

   a) whether Mercedes engaged in the conduct alleged herein;

   b) whether Mercedes knew or should have known that the MBRACE system would become obsolete;

   c) whether Mercedes knew or should have known that the defects existed with respect to the MBRACE system would lead to permanently disabling the system;

   d) whether Mercedes caused the MBRACE system to become inoperable upon the inevitable discontinuation of the 3G broadband spectrum;

   e) whether Mercedes intentionally, negligently or recklessly failed to disclose and/or concealed the imminent obsolescence of the MBRACE system;

   f) whether Mercedes owed a duty to Plaintiffs and Class Members to disclose the imminent obsolescence and inoperability of the MBRACE system;

   g) whether Mercedes' failure to disclose information about the MBRACE system was material;

h)  whether Mercedes required owners of Class Vehicles to pay for replacing the MBRACE system and/or services;

i)  whether Mercedes required and/or directed owners of MBRACE-compatible vehicles to purchase the Verizon Hum replacement and any and all additional services, such as a Verizon data plan, to replace the MBRACE system;

j)  whether Mercedes breached its express warranties by including the MBRACE system as a standard feature on its automobiles at the time of sale despite its imminent obsolescence;

k)  whether Mercedes breached its implied warranties by including the MBRACE system as a standard feature but later causing the system to be obsolete;

l)  whether Mercedes' unlawful, unfair, and/or deceptive practices harmed Plaintiffs and Class Members;

m)  whether Mercedes was unjustly enriched by its deceptive practices; and

n)  whether Plaintiffs and Class Members are entitled to equitable or injunctive relief and, if so, the relief to which they are entitled.

## VII    TOLLING AND STATUTES OF LIMITATIONS

### A.  Discovery Rule

96.    Mercedes' knowing and active concealment and denial of the facts alleged herein toll any applicable statute(s) of limitations. Plaintiffs and Class Members could not reasonably have discovered the true, latent nature of the MBRACE Defect until shortly before commencing this class action litigation.

97.    Plaintiffs and Class Members had no reasonable ability to discover the presence of the MBRACE defect in Class Vehicles within the applicable statute of limitations and could

not have discovered through the exercise of reasonable diligence that Mercedes was concealing the MBRACE defect in Class Vehicles and misrepresenting the safety, quality and reliability of Class Vehicles.

98.     Any statutes of limitation otherwise applicable to any claims asserted herein thus have been tolled by the discovery rule.

## B.     Fraudulent Concealment

99.     All applicable statutes of limitations have also been tolled by Mercedes' knowing, active and ongoing fraudulent concealment of material facts alleged herein.

100.    Mercedes had a duty to disclose, among other things, the 3G-only capabilities and imminent obsolescence of the MBRACE system.

101.    Despite their knowledge, Mercedes actively concealed these material facts from Plaintiffs and Class Members while continuing to profit from the sale and lease of Class Vehicles equipped with technology Mercedes' knew would become obsolete.

102.    As a result of Mercedes' active concealment, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## C.     Estoppel

103.    Mercedes had, and continues to have, a duty to disclose to Plaintiffs and Class Members the true character, nature and quality of the Class Vehicles, including the facts that the Class Vehicles require the costly purchase of aftermarket telematics systems, enhanced safety concerns, and have a diminished resale value.

104.    Instead, Mercedes concealed the true character, nature, and quality of Class Vehicles and knowingly made misrepresentations about the quality, reliability, functionality, characteristics, and performance of Class Vehicles.

105. Plaintiffs and Class Members reasonably relied on upon Mercedes' knowing and affirmative misrepresentations and/or active concealment of these facts.

106. Based on the foregoing, Mercedes is estopped from relying on any statutes of limitation as a defense in this action.

## VIII CAUSES OF ACTION

**A.** **Claims Brought on Behalf of the Nationwide Class**

### COUNT I

### Violation of Magnusson-Moss Warranty Act

### (15 U.S.C. § 2301, *et seq*.)

107. Plaintiffs and the Class incorporate by reference preceding and succeeding paragraph as though fully set forth herein.

108. Plaintiffs bring this claim on behalf of themselves and the Class.

109. Plaintiffs and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

110. MBUSA and MB GROUP are "supplier[s]" and "warrantor[s]" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

111. The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

112. Mercedes express warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

113. Mercedes breached its express warranties by:

a) selling and leasing Class Vehicles with the MBRACE system that is defective in materials and/or workmanship, requiring repair or replacement within the warranty; and

b) refusing and/or failing to honor Plaintiffs' express warranties by repairing or replacing, free of charge, the MBRACE system upon its inoperability.

114. Plaintiffs and Class Members relied on the length and existence of the express warranties when deciding whether to purchase or lease the Class Vehicles.

115. Mercedes' breach of express warranties has deprived Plaintiffs and Class Members of the benefit of their bargain.

116. The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000 (exclusive of interest and costs) computed on the basis of all claims to be determined in this lawsuit.

117. Mercedes received a reasonable opportunity to cure its breach of the written warranties and has failed to do so. Alternatively, requiring Plaintiffs and Class Members to do so would be futile. Mercedes has been on notice about the pending obsolescence of its 3G-only MBRACE system for years due to the nationwide adoption and shift towards later generation networks as early as 2010 and their relationship with Verizon—their partner in the development of MBRACE and a key participant in the telecommunications industry. Despite this, Mercedes does not intend to repair MBRACE, instead requiring consumers to purchase another product to replace it.

118. As a direct and proximate result of Mercedes' breach of its express warranties, Plaintiffs and Class Members sustained damage as set forth herein and are entitled to actual and

compensatory damages, equitable relief, attorneys' fees and costs, and other relief in an amount to be proved at trial.

**B.    Claims Brought on Behalf of the Illinois Class**

<u>COUNT II</u>

<u>Violation of the Illinois Consumer Fraud and</u>

<u>Deceptive Business Practices Act</u>

**(815 Ill. Comp. Stat. § 505/1, *et seq.*)**

119.    Plaintiff Rose and the Illinois Class incorporate by reference preceding and succeeding paragraph as though fully set forth herein.

120.    Plaintiff Rose brings this claim on behalf of himself and members of the Illinois Class.

121.    The Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") prohibits unfair or deceptive business practices including, "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with the intent that others rely upon the concealment, suppression or omissions of such material fact . . . ." Ill. Comp. Stat. § 505/2.

122.    Plaintiff Rose and Illinois Class Members are "persons" as defined by 815 Ill. Comp. Stat. § 505/1.

123.    MBUSA and MB GROUP are "persons" as defined by 815 Ill. Comp. Stat. § 505/1.

124.    MBUSA and MB GROUP are "person[s]" as defined by 815 Ill. Comp. Stat. § 505/1.

125.     MBUSA and MB GROUP are and have at all relevant times, engaged in "trade" and commerce" as defined by 815 Ill. Stat. Comp. § 505/1(f).

126.     Mercedes engaged in unfair and deceptive practiced by concealing, misrepresenting, suppressing, and/or omitting material facts from Plaintiff Rose, Illinois Class Members, and the general public concerning the defective MBRACE system and its imminent obsolescence. MBUSA continued to conceal, misrepresent, suppress, and/or omit these material facts post-sale.

127.     The facts misrepresented, concealed, and/or omitted by Mercedes are material because they directly concern the safety of Class Vehicles and a reasonable consumer would have considered them to be important in deciding whether to purchase the Class Vehicles or pay a lesser price. Had Plaintiff Rose and the Illinois Class known the Class Vehicles were defective, they would not have purchased the Class Vehicles or would have paid less for them.

128.     Merceds intended that Plaintiff Rose, Illinois Class Members, and the general public would rely on the concealment, misrepresentation, and omission of these material facts and purchase Class Vehicles at a cost including a non-defective MBRACE system.

129.     As a direct and proximate result of Mercedes' violation of the ICFA, Plaintiff Rose and Illinois Class Members sustained damage as set forth herein and are entitled to actual and consequential damages, attorneys' fees and costs, and other relief in an amount to be proved at trial.

130.     Plaintiff Rose and Class Members allege, as outlined above, that Mercedes intentionally and/or knowingly violated the ICFA and that their conduct has been injurious to the public in violating the ICFA and Illinois Uniform Deceptive Trade Practices act which are designed to protect the public and MBUSA's conduct is easily capable of repetition. Therefore,

Plaintiff Rose and Illinois Class Members seek punitive damages under Ill. Comp. Stat. § 505/10a(a).

## COUNT III

### Violation of the Illinois Uniform Deceptive Trade Practices Act

**(815 Ill. Comp. Stat. § 510/1, *et seq.*)**

131.    Plaintiff Rose and the Illinois Class incorporate by reference preceding and succeeding paragraph as though fully set forth herein.

132.    Plaintiff Rose brings this claim on behalf of himself and members of the Illinois Class.

133.    The Illinois Uniform Deceptive Trade Practices Act ("IUDTPA") prohibits deceptive trade practices including false statements, misrepresentations, and omissions concerning, among other things, the characteristics, quality, and source of goods and services in a manner that is likely to deceive or mislead a reasonable consumer. 815 Ill. Comp. Stat. § 510/2.

134.    Plaintiff Rose brings this claim on behalf of himself and members of the Illinois Class.

135.    Plaintiff Rose, Illinois Class Members, MB GROUP, and MBUSA are "persons" as defined by 815 Ill. Comp. Stat. § 510/1.

136.    Mercedes engaged in unfair and deceptive acts in violation of section 2 of the IUDTPA by the practices described above, and by knowingly and intentionally concealing from Plaintiff Rose and Class Members that the Class Vehicles suffer from a defect(s) (and the costs, risks, and diminished value of the vehicles as a result of this problem). These acts and practices violate, at a minimum, the following sections of the IUDTPA:

- representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have,

- representing that the Class Vehicles are of a particular standard, quality, or grade, when they are not;

- advertising the Class Vehicles with the intent not to sell them as advertised, and

- engaging in fraudulent and deceptive conduct which creates a likelihood of confusion and misunderstanding.

137. Mercedes represented that Class Vehicles had benefits and characteristics that they did not have, were of a particular standard or quality, and engaged in conduct that created a likelihood of confusion or misunderstanding among consumers in violation of 815 Ill. Comp Stat. § 510/2(a)(5), (a)(7), and (a)(12).

138. Mercedes knew of the defects in the MBRACE system of the Class Vehicles yet misrepresented to the public, consumers, Plaintiff Rose, and Illinois Class Members that the Class Vehicles were free from defects.

139. Mercedes concealed, misrepresented, and/or omitted the defects from Plaintiff Rose and Illinois Class Members.

140. The facts misrepresented, concealed, and/or omitted by Mercedes are material because they directly concern the safety of the Class Vehicles and a reasonable consumer would have considered them to be important in deciding whether to purchase the Class Vehicles or pay a lesser price. Had Plaintiff Rose and the Illinois Class known the Class Vehicles were defective, they would not have purchased the Class Vehicles or would have paid less for them.

141. As a direct and proximate result of Mercedes' conduct, Plaintiff Rose and Illinois Class Members were harmed and suffered actual damages in that the MBRACE system in their

vehicles became, and will forever be, obsolete. Plaintiff Rose and Class Members did not receive the benefit of the bargain at the time of sale or lease, as they received for vehicles worth less than they paid given the outdated technology and imminent obsolescence of the MBRACE system. Since the purchase or sale, Plaintiff Rose and Class Members have suffered further losses the diminished value of Class Vehicles given the defective condition of the vehicle and the substantial out-of-pocket costs to Plaintiff Rose and Class Members to purchase Verizon Hum and the required Verizon data plan to have the connected car capabilities they believed they had already purchased.

142.    As a direct and proximate result of MBUSA's violation of the IUDTPA, Plaintiff Rose and Illinois Class Members sustained damage as set forth herein and are entitled to actual, compensatory and punitive damages, attorneys' fees and costs, and other relief in an amount to be proved at trial.

## COUNT IV

## Breach of Express Warranty

## (810 Ill. Comp. Stat. §§ 5/2-313 & 5/2A-210)

143.    Plaintiff Rose and the Illinois Class incorporate by reference preceding and succeeding paragraph as though fully set forth herein.

144.    Plaintiff Rose brings this claim on behalf of himself and members of the Illinois Class.

145.    MBUSA and MB GROUP were and are at all relevant times a "merchant" with respect to motor vehicles under 810 Ill. Comp. Stat. §§ 5/2-104(1) and 5/2A-103(3), and "sellers" of motor vehicles under § 5/2-103(1)(d).

146.    The Class Vehicles are and were at all relevant times "goods" within the meaning of 810 Ill. Comp. Stat. §§ 5/2-105(1) and 5/2A-103(1)(h).

147.    In connection with the purchase of the Class Vehicles, Mercedes expressly warranted that the Class Vehicles were covered by the Limited Warranty. Mercedes promised to cover the cost of all parts and labor needed to repair the MBRACE system of the Class Vehicles that were defective in workmanship and materials. Moreover, Mercedes expressly warranted that its obligations under the Limited Warranty would run for the entire duration of Plaintiff Rose's and Class Members' ownership of the Class vehicles.

148.    The Limited Warranty promise formed the basis of the bargain that was reached when Plaintiff Rose and the Illinois Class purchased their Class Vehicles.

149.    Mercedes breached the Limited Warranty by refusing to repair and/or adjust the materials and workmanship defects in the MBRACE system of the Class Vehicles.

150.    Affording Mercedes a reasonable opportunity to cure its breach of the Limited Warranty would be unnecessary and futile here because Mercedes has expressly repudiated its obligations.

151.    Furthermore, the limited warranty of repair and/or adjustments fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff Rose and the Illinois Class Members whole and because Mercedes has failed and/or refused to adequately provide the promised remedies within a reasonable time.

152.    Mercedes received notice of these issues through numerous customer complaints, its knowledge of the imminent obsolescence of 3G networks, and the instant Complaint.

153.    As a direct and proximate result of Mercedes' breach of the express warranty, Plaintiff Rose and Illinois Class Members sustained damage as set forth herein and are entitled to

actual, compensatory, and punitive damages, attorneys' fees and costs, and other relief in an amount to be proved at trial.

## COUNT V

### Breach of Contract/Common Law Warranty

**(Based on Illinois Law)**

154.     Plaintiff Rose and the Illinois Class incorporate by reference the preceding and succeeding paragraphs as though fully set forth herein.

155.     Plaintiff Rose brings this claim on behalf of himself and members of the Illinois Class.

156.     To the extent Mercedes' repair or adjust commitment is deemed not to be a warranty under the Illinois Commercial Code, Plaintiff Rose and the Illinois Class Members plead in the alternative under common law warranty and contract law theories. Mercedes limited the remedies available to Plaintiff Rose and the Illinois Class Members to just repairs and adjustments needed to correct defects in materials or workmanship of the MBRACE system.

157.     Mercedes breached this warranty or contract obligation by refusing to cover the cost of repairing the defective components of the obsolete MBRACE system of the Class Vehicles.

158.     As a direct and proximate result of Mercedes' breach of contract of the implied warranty, Plaintiff Rose and Illinois Class Members sustained damage as set forth herein and are entitled to actual and compensatory damages, attorneys' fees and costs, and other relief in an amount to be proved at trial.

## COUNT VI

## Fraud By Concealment

## (Based on Illinois Law)

159.    Plaintiff Rose incorporates by reference the above allegations as though fully set forth herein.

160.    Plaintiff Rose brings this claim on behalf of himself and members of the Illinois Class.

161.    Mercedes had a duty to disclose these safety issues because it consistently marketed its vehicles as safe and proclaimed safety as one of Mercedes' highest corporate priorities.

162.    In addition, Mercedes had a duty to disclose these omitted material facts because they were known and/or accessible only to Mercedes who has superior knowledge and access to the facts, and Mercedes knew they were not known to or reasonably discoverable by Plaintiff Rose and the Illinois Class Members.

163.    The facts Mercedes concealed are material because they directly impact the safety of the Class Vehicles. A reasonable consumer would have considered them to be important when deciding whether to purchase the Class Vehicles or pay a lesser price.

164.    Mercedes actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiff Rose and the Illinois Class Members to purchase the Class Vehicles at a higher price than they otherwise would have paid.

165.    Mercedes still has not made full and adequate disclosure and continues to defraud Plaintiff Rose and the Illinois Class Members.

166. Plaintiff Rose and the Illinois Class Members were unaware of these omitted material facts and would not have acted as they did had they known of the concealed and/or suppressed facts. The actions of Plaintiff Rose and the Illinois Class Members were justified. Mercedes was in exclusive control of the material facts and such facts were not known to the public, Plaintiff Rose, and/or members of the Illinois Class.

167. As a direct and proximate result of Mercedes' fraudulent concealment of material facts, Plaintiff Rose and Illinois Class Members sustained damage as set forth herein and are entitled to actual, compensatory and punitive damages, attorneys' fees and costs, and other relief in an amount to be proved at trial.

168. Mercedes' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiff Rose and the Class Members. Its conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT VII

### Unjust Enrichment

**(Based on Illinois Law)**

169. Plaintiff Rose incorporates by reference the above allegations as though fully set forth herein.

170. Plaintiff Rose brings this claim on behalf of himself and members of the Illinois Class.

171. Mercedes had knowledge of the safety defects in the Class Vehicles, which it failed to disclose to Plaintiff Rose and the Illinois Class Members.

172.     As a result of their wrongful and fraudulent acts and omissions, as set forth above, pertaining to the design defect of their vehicles and the concealment of the defect, Defendants charged a higher price for the Class Vehicles than Plaintiff Rose and the Illinois Class Members otherwise would have paid, and Mercedes obtained monies which rightfully belong to Plaintiff Rose and the Illinois Class Members.

173.     Mercedes appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiff Rose and the Illinois Class Members, who without knowledge of the safety defects paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Mercedes to retain these wrongfully obtained profits.

174.     Plaintiff Rose and the Illinois Class Members, therefore, are entitled to restitution and seek an order establishing Mercedes as constructive trustees of the profits unjustly obtained, plus interest.

**C.     Claims Brought on Behalf of the New York Class**

<u>**COUNT VIII**</u>

<u>**Violation of New York General Business Law, N.Y. Gen. Bus. Law § 349**</u>

**(N.Y. Gen. Bus. Law § 349)**

175.     Plaintiff Gian and the New York Class incorporate by reference preceding and succeeding paragraph as though fully set forth herein.

176.     Plaintiff Gian brings this claim on behalf of herself and members of the New York Class.

177.     As alleged above, Mercedes made numerous material misrepresentations about the safety, reliability, and durability of the Class Vehicles and the MBRACE system that were either false or misleading. Defendants also concealed and/or omitted material facts concerning

the imminent obsolescence of the MBRACE system, its impact on the safety, reliability, and durability of the Class Vehicles, and, therefore, value of the Class Vehicles. Each of these misrepresentations and omissions contributed to the deceptive context of Mercedes' unlawful advertising and representations as a whole.

178.    Mercedes made its deceptive and misleading statement and misrepresentations willfully, wantonly, and with reckless disregard for the truth.

179.    Mercedes directed its misrepresentation, deceptive practices, and fraudulent acts at consumers with the goal of inducing consumers, such as Plaintiff Gian and New York Class Members, to rely on these misrepresentations and purchase Class Vehicles that they otherwise would not have purchased or would have purchased at a lower price.

180.    Mercedes' misrepresentations, concealments and omissions were material because they were likely to mislead a reasonable consumer to believe that Class Vehicles came equipped with a state-of-the-art telematics system that was manufactured to last for the life of the vehicle, or at least be capable of adapting to a technological change that had been easily foreseeable.

181.    Plaintiff Gian and New York Class Members viewed and relied upon Mercedes' deceptive acts and misrepresentations concerning Class Vehicles, the MBRACE system, and its safety features when purchasing their Class Vehicles.

182.    As a direct and proximate result of Mercedes' misleading and deceptive practices, Plaintiff Gian and New York Class Members suffered injuries in which they, among other things, overpaid for their Class Vehicles, were deprived of the benefit of their bargain, suffered the diminution of the value of Class Vehicles, and have been forced to pay out-of-pocket expenses to purchase aftermarket telematics systems, as well as other costs like data packages.

183. Mercedes' conduct and violations were knowing and willful, and Plaintiff Gian and New York Class Members are entitled to treble damages under New York General Business Law section 349(h).

184. As a direct and proximate result of Mercedes' violation of New York General Business Law section 349, Plaintiff Gian and New York Class Members sustained damage as set forth herein and are entitled to actual, compensatory and treble damages, equitable relief, attorneys' fees and costs, and other relief in an amount to be proved at trial.

## COUNT IX

### False Advertising

### (N.Y. Gen. Bus. Law § 350)

185. Plaintiff Gian and the New York Class incorporate by reference preceding and succeeding paragraph as though fully set forth herein.

186. Plaintiff Gian brings this claim on behalf of herself and on behalf of the members of the New York Class.

187. Mercedes was, at all times relevant, engaged in the "trade or commerce" of vehicles pursuant to N.Y. Gen. Bus. Law § 350.

188. As alleged above, Mercedes made numerous material misrepresentations about the safety, reliability, and durability of the Class Vehicles and the MBRACE system that were either false or misleading. Defendants also concealed and/or omitted material facts concerning the imminent obsolescence of the MBRACE system, its impact on the safety, reliability, and durability of the Class Vehicles, and, therefore, value of the Class Vehicles. Each of these misrepresentations and omissions contributed to the deceptive context of Mercedes' unlawful advertising and representations as a whole.

189.    Mercedes' misrepresentations, concealments and omissions were material because they were likely to mislead a reasonable consumer to believe that Class Vehicles came equipped with a state-of-the-art telematics system that was manufactured to last for the life of the vehicle, or at least be capable of adapting to a technological change that had been easily foreseeable.

190.    Mercedes directed its misrepresentation, deceptive practices, and fraudulent acts at consumers with the goal of inducing consumers, such as Plaintiff Gian and New York Class Members, to rely on these misrepresentations and purchase Class Vehicles that they otherwise would not have purchased or would have purchased at a lower price.

191.    As alleged above, Mercedes made numerous material misrepresentations about the safety, reliability, and durability of the Class Vehicles and the MBRACE system that were either false or misleading. Defendants also concealed and/or omitted material facts concerning the imminent obsolescence of the MBRACE system, its impact on the safety, reliability, and durability of the Class Vehicles, and, therefore, value of the Class Vehicles. Each of these misrepresentations and omissions contributed to the deceptive context of Mercedes' unlawful advertising and representations as a whole.

192.    Mercedes' misleading and deceptive advertising and labeling of Class Vehicles and the MBRACE system were material because they were likely to mislead a reasonable consumer to believe that Class Vehicles came equipped with a state-of-the-art telematics system that was manufactured to last for the life of the vehicle, or at least be capable of adapting to a technological change that had been easily foreseeable, and the reasonable consumer would rely on such advertising when purchasing the Class Vehicle.

193.    Mercedes' advertising and labeling were also materially misleading because the omitted and/or actively concealed information concerning, among other things, the 3G-only

capability of the MBRACE system, its imminent obsolescence, and the future need to purchase a new telematics system from a third party, which, had it been properly disclosed, would have been considered by the reasonable consumer.

194. Plaintiff Gian and New York Class Members viewed and relied upon Mercedes'false advertising concerning the Class Vehicles, the MBRACE system, and its safety features when purchasing their Class Vehicles.

195. Mercedes made its deceptive and misleading statement and misrepresentations willfully, wantonly, and with reckless disregard for the truth.

196. As a direct and proximate result of Mercedes' false advertising, Plaintiff Gian and New York Class Members suffered injuries in which they, among other things, overpaid for their Class Vehicles, were deprived of the benefit of their bargain, suffered the diminution of the value of Class Vehicles, and have been forced to pay out-of-pocket expenses to purchase aftermarket telematics systems, as well as other costs like data packages.

197. Mercedes' conduct and violations were knowing and willful, and Plaintiff Gian and New York Class Members are entitled to treble damages under New York General Business Law section 350(e).

198. As a direct and proximate result of Mercedes' violation of New York General Business Law section 350, Plaintiff Gian and New York Class Members sustained damage as set forth herein and are entitled to actual, compensatory, and treble damages, equitable relief, attorneys' fees and costs, and other relief in an amount to be proved at trial.

## COUNT X

## Breach of Express Warranty

## (N.Y. U.C.C. Law §§ 2-313 & 2A-210)

199.    Plaintiff Gian and the New York Class incorporate by reference preceding and succeeding paragraph as though fully set forth herein.

200.    Plaintiff Gian brings this claim on behalf of herself and on behalf of the members of the New York Class.

201.    At all relevant times, MBUSA and MB GROUP were and are "merchants" with respect to motor vehicles under N.Y. UCC Law § 2-104(1) and "sellers" of motor vehicles under § 2-103(1)(d).

202.    The Class Vehicles are and were at all relevant times "goods" within the meaning of N.Y. UCC Law §§ 2-105(1) and 2A-103(1)(h).

203.    In connection with the purchase of the Class Vehicles, Mercedes expressly warranted that the Class Vehicles were covered by the Limited Warranty. It promised to cover the cost of all parts and labor needed to repair MBRACE system components of the Class Vehicles that were defective in workmanship and materials. Moreover, Mercedes expressly warranted that its obligations under the Limited Warranty would run for the entire duration of Plaintiff Gian's and the Class Members' ownership of the Class vehicles.

204.    Mercedes' promise of the Limited Warranty formed the basis of the bargain reached when Plaintiff Gian and the New York Class purchased their Class Vehicles.

205.    Mercedes has breached the Limited Warranty by refusing to repair defects in the workmanship and/or materials of the MBRACE system.

206.    Affording Mercedes a reasonable opportunity to cure its breach of the Limited Warranty would be unnecessary and futile here because Mercedes has expressly repudiated its obligations under its terms.

207.    Furthermore, the limited warranty of repair and/or adjustments of the defective MBRACE system fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff Gian and the New York Class Members whole and because Mercedes failed and/or refused to adequately provide the promised remedies within a reasonable time.

208.    Mercedes was provided notice of these issues by numerous customer complaints, its knowledge of the imminent obsolescence of 3G networks, and the instant Complaint.

209.    As a direct and proximate result of Mercedes' breach of the express warranty, Plaintiff Gian and New York Class Members sustained damage as set forth herein and are entitled to actual and compensatory damages, equitable relief, attorneys' fees and costs, and other relief in an amount to be proved at trial.

## COUNT XI

### Breach of Contract/Common Law Warranty

### (Based on New York Law)

210.    Plaintiff Gian and the Class incorporate by reference preceding and succeeding paragraph as though fully set forth herein.

211.    Plaintiff Gian bring this claim on behalf of herself and on behalf of the members of the New York Class.

212.    To the extent Mercedes' repair or replace commitment is deemed not a warranty under the New York Commercial Code, Plaintiff Gian and New York Class Members plead in the alternative under common law warranty and contract law theories. Mercedes limited the

remedies available to Plaintiff Gian and New York Class Members to purchasing, out-of-pocket, a replacement telematics system from a third-party rather than correcting defects in materials or workmanship of the MBRACE system in Class Vehicles.

213. Mercedes breached this warranty and/or contract obligation by refusing to cover the cost of repairing or replacing the obsolete MBRACE system of the Class Vehicles.

214. As a direct and proximate result of Mercedes' breach of contract or common law warranty, Plaintiff Gian and New York Class Members sustained damage as set forth herein and are entitled to actual and compensatory damages, equitable relief, attorneys' fees and costs, and other relief in an amount to be proved at trial.

## COUNT XII

## Fraud By Concealment

### (Based on New York Law)

215. Plaintiff Gian incorporates by reference the above allegations as though fully set forth herein.

216. Plaintiff Gian brings this claim on behalf of herself and on behalf of the members of the New York Class.

217. Mercedes had a duty to disclose these safety issues because they consistently marketed their vehicles as safe and proclaimed that safety is one of Mercedes' highest corporate priorities.

218. In addition, Mercedes had a duty to disclose these omitted material facts because they were known and/or accessible only to Mercedes who has superior knowledge and access to the facts, and Mercedes knew they were not known to or reasonably discoverable by Plaintiff Gian and New York Class Members.

219.    The facts misrepresented, concealed, and/or omitted by Mercedes are material because they directly impact the safety of the Class Vehicles and a reasonable consumer would have considered them to be important in deciding whether to purchase the Class Vehicles or pay a lesser price. Had Plaintiff Gian and the New York Class known the Class Vehicles were defective, they would not have purchased the Class Vehicles or would have paid less for them.

220.    Mercedes actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiff Gian and New York Class Members to purchase the Class Vehicles at a higher price than they otherwise would have paid.

221.    Mercedes still has not made full and adequate disclosure and continue to defraud Plaintiff Gian and New York Class Members.

222.    Plaintiff Gian and New York Class Members were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of Plaintiff Gian and New York Class Members were justified. Mercedes was in exclusive control of the material facts and such facts were not known to the public, or Plaintiff Gian and members of the New York Class.

223.    As a direct and proximate result of Mercedes' fraudulent concealment of material facts, Plaintiff Gian and New York Class Members sustained damage as set forth herein and are entitled to actual and compensatory damages, equitable relief, attorneys' fees and costs, and other relief in an amount to be proved at trial.

224.    Mercedes' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiff Gian and New York Class Members. Its conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT XIII

## Unjust Enrichment

## (Based on New York Law)

225.    Plaintiff Gian incorporates by reference the above allegations as though fully set forth herein.

226.    Plaintiff Gian brings this claim on behalf of herself and on behalf of the members of the New York Class.

227.    Mercedes had knowledge of the safety defects in the Class Vehicles, which it failed to disclose to Plaintiff Gian and New York Class Members.

228.    As a result of their wrongful and fraudulent acts and omissions, as set forth above, pertaining to the design defect of their vehicles and the concealment of the defect, Defendants charged a higher price for the Class Vehicles than Plaintiff Gian and New York Class Members otherwise would have paid, and Mercedes obtained monies which rightfully belong to Plaintiff Gian and New York Class Members.

229.    Mercedes appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiff Gian and New York Class Members, who without knowledge of the safety defects paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Mercedes to retain these wrongfully obtained profits.

230.    Plaintiff Gian and New York Class Members, therefore, are entitled to restitution and seek an order establishing MBUSA as constructive trustees of the profits unjustly obtained, plus interest.

## IX     PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and Class Members, respectfully

request that this Court:

    a.   determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

    b.   appoint Plaintiffs as the representative of the Class and their counsel as Class counsel;

    c.   award all actual, general, treble, special, incidental, statutory, punitive, and consequential damages and restitution to which Plaintiffs and Class Members are entitled;

    d.   award pre-judgment and post-judgment interest on any monetary relief;

    e.   grant appropriate injunctive and/or declaratory relief, including, without limitation, an order requiring MBUSA to repair, recall, and/or replace Class Vehicles and extend applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs and Class Members with appropriative curative notice regarding the existence and cause of the MBRACE Defect,

    f.   award reasonable attorneys' fees and costs; and

    g.   grant such further relief that this Court deems appropriate.

Dated:  November 3, 2022               Respectfully Submitted,

                         */s/ Derek Y. Brandt*
                         By: Derek Brandt
                         **MCCUNE LAW GROUP**
                         231 N. Main Street, Suite 20
                         Edwardsville, IL 62025
                         Telephone: (618) 307-6116
                         Facsimile: (618) 307-6161
                         Email:  dyb@mccunewright.com

                         David C. Wright*
                         Mark I. Richards*
                         **MCCUNE LAW GROUP**
                         3281 E. Guasti Road, Suite 100
                         Ontario, CA  91761

Tel: (909) 557-1250
Fax: (909) 557-1275
dcw@mccunewright.com
mir@mccunewright.com

Kenneth A. Stern*
**Stern Law, PLLC**
41850 W. Eleven Mile Rd., Suite 121
Novi, MI 48375
Tel:  (248)347-7300
Fax: (248)305-3250
ken@sternlawonline.com

\* Applications *Pro Hac Vice* to be submitted

*Attorneys for Individual and Representative*
*Plaintiffs Jim Rose and Anita Gian*