UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JIM ROSE and ANITA GIAN<br><br>Plaintiffs,<br><br>v.<br><br>MERCEDES-BENZ USA, LLC; MERCEDES-BENZ GROUP AG F/K/A DAIMLER AG; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 22-cv-06099<br><br>Judge Mary M. Rowland |

## **MEMORANDUM OPINION AND ORDER**

Mercedes-Benz USA, LLC and Mercedes-Benz Group AG (collectively "Mercedes Benz") moves to compel arbitration in this putative class action brought by Jim Rose and Anita Gian ("Plaintiffs") under the Magnusson-Moss Warranty Act, 15 U.S.C. §§ 2301 ("MMWA") and various state law claims. For the reasons stated herein, the motion to compel arbitration [25] is granted.

**I.  Background**

[m]brace is a telematics service that provides various features such as navigation and destination planning in Mercedes-Benz vehicles. [25-1], Declaration of Thomas Grycz ("Grycz Decl."), at 2-3. The service is provided on a subscription basis, whereby a subscriber must accept the Terms of Service ("TOS Agreement") to activate and use mbrace. *Id.* at 2. A subscriber can do so by enrolling at an auto dealership or calling the mbrace Call Center. Individuals who enroll in mbrace at a dealership must accept

1

the TOS Agreement by clicking "I accept" on an iPad or computer. *Id*. Individuals who enroll via the mbrace Call Center are informed about the TOS Agreement verbally during the call and are told where they can locate and review the TOS Agreement before accepting. *Id*. Following activation of mbrace, subscribers receive various documents, including a Welcome Kit that informs them the service is subject to the TOS Agreement as well as a Welcome Email containing a link to the TOS. *Id*. The TOS Agreement is also referenced or otherwise linked to subsequent communications with subscribers including renewal reminders. *Id*. Subscribers can additionally access and review the TOS at any time by logging onto the MBUSA website or by calling 866-990-9007. *Id*.

On December 23, 2016, Plaintiff Jim Rose activated mbrace, the same day he purchased his 2017 vehicle. Grycz Decl. at 4. As a precondition to the mbrace service's activation, Rose consented to the terms and conditions of the TOS Agreement. *Id*. Rose received complimentary mbrace services for five years. On January 5, 2022, Rose re-subscribed to the mbrace service. *Id*. Pursuant to Mercedes-Benz policies and procedures, Rose received copies of the TOS Agreement multiple times, including in connection with both the first and second subscriptions. *Id*. Rose agreed to the TOS Agreement numerous times—first when he purchased his vehicle and each time he renewed his subscription. *Id*.

Plaintiff Anita Gian activated mbrace on January 19, 2015, two days after purchasing her 2015 vehicle. Gryzc Decl. at 4. As a precondition to using the mbrace service, Ms. Gian consented to the conditions of the TOS Agreement. *Id*. In connection

2

with the purchase of her vehicle, Gian received complimentary mbrace services for six months, with a paid monthly subscription thereafter. *Id*. After her initial trial ended, Gian continued to use the service until she voluntarily canceled it on November 19, 2022. *Id* at 5. Gian received copies of the TOS Agreement multiple times, including in connection with her initial subscription and when she elected to begin paying the monthly subscription fee after the complimentary six-month trial ended. *Id*.

The TOS Agreement contains provisions addressing arbitration and class actions. Dkt. 25-2 at 1 (September 8, 2013 TOS Agreement); Grycz Decl. ¶¶7, 9. The Agreement further names Mercedes-Benz companies as third-party beneficiaries to the TOS Agreement. Dkt. 25-2 at 1 ("Mercedes-Benz USA, LLC and its parent subsidiaries and affiliates, including, without limitation, Daimler AG, Daimler Trust, DCFS Trust and DCFS USA LLC (collectively referred to … as the "**Mercedes-Benz Companies**") shall be third-party beneficiaries under these Terms of Service and the protections set forth in these Terms of Service…").

The TOS Agreement states in capital letters how a customer accepts its terms:

> YOU WILL HAVE AGREED TO THESE TERMS OF SERVICE BY ANY OF THE FOLLOWING: (i) BUYING A NEW (OR USED) VEHICLE THAT INCLUDES MBRACE, OR A TRIAL PERIOD, IN THE PURCHASE PRICE; (ii) BY USING OR AUTHORIZING SOMEONE TO USE YOUR VEHICLE AND MBRACE SERVICE OR ACCEPTING ANY OF ITS BENEFITS; OR (iii) BY SPEAKING WITH A CUSTOMER SERVICE REPRESENTATIVE OR OTHERWISE COMMUNICATING WITH US AND CONFIRMING THAT YOU WISH TO SIGN UP FOR THE SERVICE.

Dkt. 25-2 at 1 (September 8, 2013 TOS).

The TOS Agreement's Dispute Resolution section, containing both arbitration and class action provisions, states in capital letters:

> YOU AND WE AGREE THAT IN THE EVENT OF ANY DISPUTES BETWEEN US, WE WILL FIRST TRY TO RESOLVE IT BY TALKING WITH EACH OTHER. IF WE ARE UNSUCCESSFUL IN RESOLVING OUR DISPUTES IN THIS MANNER WITHIN A REASONABLE TIME PERIOD, YOU AND VERIZON [EACH] AGREE THAT, TO THE FULLEST EXTENT PROVIDED BY LAW:
>
> (1) ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THESE TERMS OF SERVICE, OR TO ANY PRODUCT OR SERVICE PROVIDED UNDER OR IN CONNECTION WITH THESE TERMS OF SERVICE, WILL BE SETTLED BY INDEPENDENT ARBITRATION INVOLVING A NEUTRAL ARBITRATOR AND ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION…
>
> (2) EVEN IF APPLICABLE LAW PERMITS CLASS ACTIONS… YOU EXPRESSLY WAIVE ANY RIGHT TO PURSUE ON A CLASS BASIS ANY SUCH CONTROVERSY OR CLAIM AGAINST VERIZON TELEMATICS, A MERCEDES-BENZ COMPANY OR ANY OF OUR SERVICE PARTNERS…

Dkt. 25-2 at § 13 (September 8, 2013 TOS), Dkt. 25-3 at § 13 (May 17, 2016 TOS).

On November 3, 2022, Plaintiffs Rose and Gian brought this putative class action against Mercedes-Benz Companies in District Court [1]. On March 28, 2023, Mercedes Benz filed the instant motion to compel arbitration [25].

## II. Standard

Under the Federal Arbitration Act ("FAA"), "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The Act "mandates that district courts *shall* direct parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S.

213, 218 (1985). It reflects a "liberal federal policy favoring arbitration agreements," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)), and places "arbitration agreements on an equal footing with other contracts," *Gore v. Alltel Comm'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (quoting *Concepcion*, 563 U.S. at 339). "When deciding whether parties agreed to arbitrate a certain matter, courts generally should apply ordinary state-law principles that govern the formation of contracts." *Druco Rest., Inc. v. Steak N Shake Enterp., Inc.*, 765 F.3d 776, 781 (7th Cir. 2014). "Whether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must give effect to the contractual rights and expectations of the parties." *Smith v. Bd. of Directors of Triad Mfg., Inc.*, 13 F.4th 613, 619 (7th Cir. 2021) (cleaned up).

Under the FAA, in response to an opposing party's refusal to arbitrate despite a written agreement for arbitration, a party "may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The party seeking to compel arbitration bears the burden to show an agreement to arbitrate. *Id.*; *see A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1063 (7th Cir. 2018). "The court may consider exhibits and affidavits regarding the arbitration agreement in question." *Friends for Health: Supporting N. Shore Health Ctr. v. PayPal, Inc.*, No. 17 CV 1542, 2018 WL 2933608, at *3 (N.D. Ill. June 12, 2018). Once the moving party makes its initial showing, the party resisting arbitration bears the burden of identifying a triable issue of fact on the purported

5

arbitration agreement. *See Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). The resisting party's evidentiary burden is like that of a party opposing summary judgment. *Id.* "[A] party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id.* As with summary judgment, the court views the evidence in the light most favorable to the nonmoving party and draws reasonable inferences in its favor. *Id.* If the party opposing arbitration identifies a genuine issue of fact as to whether an arbitration agreement was formed, "the court shall proceed summarily to the trial thereof." *Id.* (quoting 9 U.S.C. § 4).

### III. Analysis

#### A. Enforceable Arbitration Agreement

The Court first addresses whether a valid arbitration agreement exists. State law controls the determination of this issue. *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 742 (7th Cir. 2010). Under Illinois law,[1] an enforceable contract requires an offer, acceptance, and consideration. *Jefferson v. Credit One Bank, N.A.*, No. 21 C 532, 2021 WL 4894704, at *3 (N.D. Ill. Oct. 20, 2021) (citing *DiLorenzo v. Valve & Primer Corp.*, 807 N.E.2d 673, 678 (Ill. App. Ct. 2004)). A party to a contract may, by her acts or conduct, assent to its terms and become bound by its provisions. *Stockman v. Midland Credit Mgmt., Inc.*, 2022 WL 1499811, at *4 (N.D. Ill. May 12, 2022); *see also Boomer v. AT&T Corp.*, 309 F.3d 404, 414-15 (7th Cir. 2002) (finding offer and acceptance

---

[1] The parties agree that Illinois law applies (New York law mirrors that of Illinois). [25] at 6; [26] at 11.

6

where plaintiff was silent and continued to use services). It is undisputed that Plaintiffs activated the mbrace service and continued to use it for a prolonged period of time. It is also undisputed that Plaintiffs re-subscribed to the mbrace service after an initial complimentary subscription ended.

Plaintiffs argue that they never accepted the terms of the TOS Agreement, including the arbitration provision, because neither can recall seeing the TOS Agreement or being presented with its terms at any point while activating or subscribing to the mbrace service. [26] at 15. The record, however, establishes the dates on which Plaintiffs activated the mbrace service on their respective vehicles, and in doing so, would have agreed to the terms of the TOS Agreement per Mercedes-Benz policies and procedures. Grycz Decl. at 2. Further, following activation, Plaintiffs would have received a Welcome Kit informing them that the mbrace service is subject to the TOS Agreement, coupled with a Welcome Email containing a link to the TOS. Plaintiffs do not offer any evidence to rebut this presumption, aside from their lack of recollection (not denial) of whether the typical procedure occurred in their case. A lack of recollection, by itself, is not enough to create a meaningful factual dispute necessitating a trial. *See, e.g., United States v. Romero*, 2017 EL 61025, at *3 (N.D. Ill. Jan. 5, 2017) (citing *Tinder*, 305 F.3d at 735-36.

Plaintiffs cite *Melvin v. Big Data Arts, LLC* for the proposition that they did not have constructive notice of the TOS. 553 F.Supp.3d 447 (N.D. Ill. Aug. 9, 2021). [26] at 12-13. But *Melvin* is distinguishable. In *Melvin*, the plaintiff created an account on a website, where he was allegedly presented with a modified "clickwrap" agreement.

*Id*. at 450. There, the defendant did not provide sufficient evidence to support his characterization of the supposed clickwrap presented to the plaintiff to allow a factfinder to infer the plaintiff had constructive notice. *Id*. at 451. Here, in contrast, Mercedes-Benz policies included providing actual notice to its customers of the TOS Agreement, where to locate it, and then following up with a Welcome Kit and Welcome Email containing a link to the TOS Agreement. Mercedes-Benz has also provided unrebutted evidence that Plaintiffs received copies of the TOS Agreement multiple times. Grycz Decl. at 4-5. Plaintiffs have not provided factual support that they did not receive actual notice per the procedures besides a lack of recollection (and not a sworn denial that it did not occur). Further, they have not provided factual support that they did not receive constructive notice through the Welcome Kit or Email. *See e.g., Wilson v. Redbox Automated Retail, LLC*, 448 F.Supp.3d 873, 882 (N.D. Ill. March 25, 2020) (describing constructive notice). This unrebutted evidence therefore shows Plaintiffs accepted the terms of the TOS Agreement, including the arbitration provision.

**B. Scope of Arbitration Agreement**

Next Plaintiffs argue their claims fall outside the arbitration Agreement because they arise from Mercedes-Benz's alleged fraud and omissions regarding capabilities of the telematics hardware system, not the mbrace service itself. [26] at 16-17. This argument fails. This Court agrees with Mercedes-Benz that the suit is centered on Plaintiffs' inability to access and use the mbrace *service*. The TOS Agreement explicitly covers "any controversy or claim arising out of or relating to… any product

8

or *service* provided under or in connection with these Terms of Service", including mbrace. Ex. 1 at § 13, Ex. 2 at § 13. (emphasis added). The mbrace service is thus covered under the TOS Agreement.

**C. Mercedez-Benz as Third-Party Beneficiary under the Agreement**

The TOS Agreement states that it exists between Verizon Telematics and the vehicle owner or lessee. Dkt 25-2 at 1, Dkt. 25-3 at 1. Plaintiffs argue that even if there is a valid arbitration Agreement, Mercedes-Benz cannot adopt Verizon's arbitration Agreement as its own. But the TOS Agreement also explicitly states that "Mercedes-Benz Companies" shall be third party beneficiaries to the contract. Dkt 25-2 at 1, Dkt. 25-3 at 1. A third-party beneficiary is a person who the contracting parties intended to benefit from the contract. *Am. United Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921, 930 (7th Cir. 2003) (internal citation omitted). A third-party beneficiary may enforce the contract because the contracting parties intended for the beneficiary to receive the benefits of the contract. *Id*. Here, the TOS is unambiguous that the parties intended for Mercedes-Benz to be a third-party beneficiary who can enforce the contract, including its arbitration provision.

**D**. **Arbitration on a Class Action Basis**

The TOS Agreement explicitly disallows class actions. Dkt. 25-2 at § 13, Dkt, 25-3 at § 13. Plaintiffs fail to develop a response to this argument and have thus waived it. *M.G. Skinner and Associates Insurance Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived[.]) (citing *United States v. Hook*, 471 F.3d 775 (7th Cir. 2006)).

**E. Stay of the Suit**

As a final matter, this Court agrees with other courts in this district dismissing the case instead of issuing a stay. *See Hauptman v. Midland Credit Mgmt., Inc.*, 2019 WL 8436961, at *2 (N.D. Ill. Jan. 31, 2019); *Russell v. Midland Credit Mgmt., Inc.*, 2021 WL 1192580, at *12 (N.D. Ill. Mar. 30, 2021) (granting motion to compel arbitration and terminating case); *Williams v. Planet Fitness, Inc.*, No. 20 CV 3335, 2021 WL 1165101, at *5 (N.D. Ill. Mar. 26, 2021) ("Courts in this district favor dismissal where 'the entire dispute clearly will be decided in arbitration and thus there is no reason to hold on to the case.'") (quoting *Wallace v. Grubhub Holdings Inc.*, No. 18 C 4538, 2019 WL 1399986, at *6 (N.D. Ill. Mar. 28, 2019), *aff'd*, 970 F.3d 798 (7th Cir. 2020)). The Court will therefore dismiss the case.

**IV. Conclusion**

For the stated reasons, Mercedes-Benz USA, LLC and Mercedes-Benz Group AG's Motion to Compel Arbitration [25] is granted. This case is dismissed without prejudice. Civil case terminated.

E N T E R:

Dated: December 11, 2023

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge